A94A2622. SMITH v. THE STATE.
(454 SE2d 635)

RUFFIN, Judge.

Eric Ake Smith was convicted of possession of less than one ounce of marijuana in violation of the Georgia Controlled Substances Act. On appeal, Smith contends the trial court erred in denying his motion to suppress.

The evidence shows that one morning, shortly after midnight, Smith was pulled over by an investigator in the narcotics division of the Douglasville Police Department. The officer testified he observed Smith swerve into different lanes three or four times, and pulled him over because he suspected Smith could have been under the influence of alcohol or drugs. The officer told Smith why he pulled him over and requested his driver's license, which Smith produced. The officer then asked Smith if he had been drinking. When Smith told the officer he had not been drinking, the officer asked why Smith was weaving. Smith told the officer he was very tired because he had traveled from another state. The officer testified Smith had no odor of alcohol on his breath and no field sobriety tests were administered.

Following the questions regarding Smith's weaving, the officer asked if he could search Smith's pickup truck. When Smith would not give his consent to the search, the officer asked if he had any contraband, specifically narcotics, in the truck. When Smith denied having contraband and explained that he just did not want the officer to search the truck, the officer told Smith he would have to call the K-9 unit. The officer testified he detained Smith because he "suspected he

possibly could have had narcotics in his vehicle," then went back to his patrol car, requested the K-9 unit and checked the status of Smith's driver's license. When asked the basis for his suspicion, the officer stated that because Smith "wouldn't consent to a search, [he] felt he had something to hide in the vehicle." After checking the license and calling for the K-9 unit, the officer observed Smith seated in the truck and placing something in his mouth. When the officer approached the truck, he saw part of a plastic bag sticking out of Smith's mouth. Following the officer's instructions, Smith stepped out of the truck and spit out a bag of what appeared to be marijuana.

In determining whether the trial court erred in denying Smith's motion to suppress the marijuana, we must determine "whether the officer's action [in pulling Smith over] was justified at its inception, and whether [the detention] was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U. S. 1, 20 (88 SC 1868, 20 LE2d 889) (1967).

1. Smith argues that the initial stop was unlawful because the weaving was a mere pretext to conduct a drug investigation. We disagree. "[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the [stop] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? [Cits.]" Id. at 21-22. In the instant case, those facts were that the officer observed Smith weaving and this weaving "had in fact served as the actual reason for the stop, the immediate purpose of which had been to investigate a possible DUI violation rather than to effect a search for drugs." *Pupo v. State*, 187 Ga. App. 765, 766 (1) (371 SE2d 219) (1988). The trial court found, and we agree, that stopping a vehicle under these circumstances was appropriate for the protection of the public. "Consequently, the trial court's factual determination that the [officer's] initial detention of the vehicle had constituted a bona fide traffic stop is supported by the evidence and must be sustained on appeal. [Cit.]" Id.

2. We turn now to an inquiry regarding the scope of Smith's detention. "While a reasonable investigative stop does not offend against the Fourth Amendment, a *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. [Cit.] Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop. [Cit.]" *Raney v. State*, 186 Ga. App. 758, 759 (368 SE2d 528) (1988). Thus, the United States Supreme Court has held that "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U. S. 491, 500 (103

SC 1319, 75 LE2d 229) (1983).

In this case, the officer testified that he stopped Smith to investigate a possible DUI violation and not to effect a search for drugs. Under these circumstances, the officer would have been authorized to ask Smith for his license to establish his identity, and to ask questions reasonably related to whether or not Smith was driving under the influence. In response to such questions, Smith offered a reasonable response that he was very tired from a long drive. Upon hearing Smith's explanation, the officer would have been authorized to continue asking questions regarding Smith's condition, to administer a statutorily authorized field sobriety test, or take any other reasonable steps to determine whether Smith was, as he originally suspected, driving under the influence. However, the evidence is uncontroverted that the officer proceeded to ask Smith questions that did not relate to his suspicion that Smith was driving under the influence and that did not relate to any traffic violations, but instead probed into Smith's possession of contraband, specifically narcotics, and culminated in the officer's request to search Smith's truck. This later questioning was based on the officer's hunch that Smith's truck contained narcotics. At the point the officer initiated this later probe, he went beyond the permissible scope of the investigation and his further detention of Smith went beyond that permitted by *Terry* and its progeny.

"The entire deterrent purpose of the rule excluding evidence seized in violation of the Fourth amendment rests on the assumption that 'limitations upon the fruit to be gathered tend to limit the quest itself.' Thus, evidence may not be introduced if it was discovered by means of a [detention] which [was] not reasonably related in scope to the justification for [its] initiation." (Citations omitted.) 392 U. S. 1 at 29. Accordingly, we find that since the marijuana was discovered during the continued illegal detention of Smith, the trial court erred in not granting his motion to suppress. See *Rogers v. State*, 206 Ga. App. 654 (426 SE2d 209) (1992).

*Judgment reversed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 28, 1995.

*Daniel B. Kane,* for appellant.

*David McDade, District Attorney, Jackie N. Stanton, James E. Barker, Assistant District Attorneys,* for appellee.