## A00A2240. THE STATE v. SIMS.
### (546 SE2d 47)

Pope, Presiding Judge.

Thomas Sims, Jr. was pulled over for speeding and caught driving with a suspended license and without insurance. After the traffic stop was complete, the officer asked whether Sims had drugs or weapons in his car; then he asked for and obtained consent to search the car. The search uncovered marijuana. The trial court agreed to suppress the marijuana, and the state appeals. The issue raised is whether an officer illegally exceeds the scope of a valid traffic stop by asking for information unrelated to the traffic stop and for consent to search for drugs while the person is still being detained and without articulable suspicion of a crime.

Sims, with two passengers, was stopped for speeding, and the officer asked to see his driver's license and insurance card. Sims' license was suspended and his insurance had expired, and the officer cited him for speeding and no insurance and then gave him notice of the suspended status of his license. Sims signed the citations. The officer kept the license because it was suspended, and, as the officer later testified, at this point the traffic stop was over. However, because Sims had no insurance, the car had to be towed. At the hearing, the officer admitted that at that moment, he had no probable cause or articulable suspicion that Sims had any contraband in his car.

The officer then asked Sims whether "he had any illegal contraband, including guns, knives, hand grenades, illegal drugs," in the car. Sims said no. He then asked whether Sims had an objection to a search of the vehicle. He testified that Sims consented. He then patted down Sims for weapons and instructed him to stand next to another officer who had been called in for safety. The search revealed what appeared to be marijuana in the backseat. A passenger who had been in the backseat was arrested. The officer then took the keys out of the ignition, opened the trunk, and discovered purported drug paraphernalia and more suspected marijuana. Sims was then arrested. The officer testified that during the search, Sims never indicated that he wanted the officer to stop or limit the search.

The trial court appears to have concluded that *Migliore v. State*, 240 Ga. App. 783 (525 SE2d 166) (1999), established a bright-line rule that after a traffic stop, any question without reasonable suspicion on a topic other than the matter for which the stop was made is impermissible. The court found that after the officer had completed the questioning concerning the traffic offenses and while he was still detaining Sims, he asked about drugs and for consent to search with-

out any reasonable suspicion of criminal activity. The trial court concluded:

> Therefore it would appear that by asking the Defendant about drugs and then asking for consent to search, Deputy Watson exceeded the scope of the permissible investigation by turning a completed traffic stop into an investigation for drugs, something that is expressly prohibited by *Migliore*.

We find this language misstates the holding in *Migliore*, but nevertheless conclude that the trial court properly suppressed the evidence.

On reviewing a trial court's ruling on a motion to suppress, "evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." (Citation and punctuation omitted.) *Rider v. State*, 222 Ga. App. 602 (475 SE2d 655) (1996). A trial court's ruling on a motion to suppress will be upheld if it is right for any reason. *Benton v. State*, 240 Ga. App. 243, 245 (1) (522 SE2d 726) (1999).

The only issue of fact in dispute on appeal is whether Sims was free to go at the end of the initial traffic stop. The trial court held that Sims was still detained. Because this finding is supported by the evidence that the officer kept Sims' license because it was suspended and that Sims' car had to be towed because there was no insurance, we cannot say it was clearly erroneous.

But the trial court's order suggests that after a valid traffic stop an officer can never ask unrelated questions or obtain valid consent to search for drugs unless he has reasonable suspicion of drug activity. The holdings in *Migliore* and similar cases are not that limiting.

The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The " 'touchstone of the Fourth Amendment is reasonableness.' *Florida v. Jimeno*, 500 U. S. 248, 250 (111 SC 1801, 114 LE2d 297) (1991)." *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Id. And, the Supreme Court has consistently rejected bright-line rules in applying this test. Id.

In deciding whether the question about drugs and weapons, standing alone, was unreasonable, we note that "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991). The Supreme Court has made clear that "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (Citation and

punctuation omitted.) Id.; *Simmons v. State*, 223 Ga. App. 781, 783 (2) (479 SE2d 123) (1996) (if the police questioning was consensual, then questions on an unrelated topic after the conclusion of a valid traffic stop are allowed).

Second, with regard to the consent to search, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (Citations omitted.) *Schneckloth v. Bustamonte*, 412 U. S. 218, 219 (93 SC 2041, 36 LE2d 854) (1973). See also *Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982). In deciding whether consent to search is valid, the Supreme Court has made clear that the sole test is whether the consent was voluntary. *Robinette*, 519 U. S. at 40.[1] And, if the consent is voluntary, an officer may obtain consent to search a car following the conclusion of a valid traffic stop, without reasonable suspicion of criminal activity. Id. Finally, " 'voluntariness is a question of fact to be determined from all the circumstances.' " (Citation omitted.) Id.

In *Robinette*, the defendant was stopped for speeding, and after the stop was completed and his license returned, the officer asked him whether he had any drugs or weapons. *Robinette*, 519 U. S. at 36. Robinette answered no, after which the officer asked if he could search the car. Robinette consented. Id. The Ohio Supreme Court had ruled that the evidence subsequently discovered in the car should be suppressed because the search resulted from an unlawful detention because Robinette had not been told that he was free to go. Id.

The Supreme Court reversed and held that the Fourth Amendment did not require such a bright-line test. *Robinette*, 519 U. S. at 39. Rather the test to be employed is whether under the totality of the circumstances the consent was voluntary. And the officer's subjective intent is immaterial to the question. Id. at 38 (citing *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996)).

However, as is shown in *Migliore* and *Smith v. State*, 216 Ga. App. 453, 454-455 (454 SE2d 635) (1995), if the officer *continues to detain* the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop. This is so because "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." (Citations omitted.) *Terry v. Ohio*, 392 U. S. 1, 18 (88 SC 1868, 20 LE2d 889) (1967). And, "[t]he scope of the search must be 'strictly tied to and justified

---

[1] The factors to be considered when determining voluntariness are described in *Schneckloth v. Bustamonte*, 412 U. S. at 229.

by' the circumstances which rendered its initiation permissible." Id. at 19. As stated in *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999), "An officer who questions *and detains* a suspect for other reasons exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity." (Emphasis supplied.)

Here, the trial court also found as a matter of fact that Sims was detained without justification when the officer began to interrogate Sims about the contents of his car. And the subsequent consent to search was the product of this impermissible seizure. Accordingly, the trial court did not err in suppressing the evidence obtained in the search.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED FEBRUARY 26, 2001.

*Lydia J. Sartain, District Attorney, Richard A. Vandever, Assistant District Attorney*, for appellant.
*Whitmer & Law, George H. Law III*, for appellee.