## A07A0374. MEDVAR v. THE STATE.

(648 SE2d 406)

MILLER, Judge.

Following a bench trial, Shawn Sinclair Medvar was convicted of trafficking in cocaine and misdemeanor possession of marijuana in violation of the Georgia Controlled Substances Act. OCGA §§ 16-13-31 and 16-13-30 (a), respectively. Medvar claims that the trial court erred in denying his motion to suppress because his consent to search his vehicle was the product of an unlawful detention following a traffic stop. Alternatively, he contends that even were his consent deemed valid, the seizure was unlawful because it exceeded the scope of his consent. We discern no error and affirm.

"We will not disturb the trial court's order on a motion to suppress if there is any evidence to support it, and we construe all evidence presented in favor of the trial court's findings and judgment." *McDaniel v. State*, 263 Ga. App. 625, 626-627 (1) (588 SE2d 812) (2003). Where, as here, the evidence was undisputed at the suppression hearing and there is no question as to the credibility of the witnesses, our review of the trial court's application of the law to the undisputed facts is de novo. *Daniel v. State*, 277 Ga. 840, 849 (5) (597 SE2d 116) (2004).

So viewed, the evidence shows that on March 2, 2004, a Lowndes County deputy sheriff was monitoring traffic on I-75 southbound when he observed a black Volkswagen Beetle pass by with what appeared to be an expired tag. The deputy followed the vehicle, determined that the tag was an illegible dealer's tag, and, after observing the driver drift out of his lane of traffic into another, effected a traffic stop. In the investigation that followed, Medvar was identified as the driver. Medvar's brother, Albert, and Leondray Gibson were identified as Medvar's passengers. Although Medvar had a driver's license, he was driving without it. After Medvar produced the vehicle's registration and his proof of ownership, the deputy issued him a warning citation and requested his consent to search his vehicle. This Medvar gave, orally and in writing — the written consent extending to "a complete search of his vehicle and the contents within it." In the search that followed, the deputy seized 1,008 grams of cocaine and less than one ounce of marijuana which had been hidden behind the dashboard in the area of the glove compartment. Medvar and his passengers were then arrested. Approximately 11 minutes elapsed during the traffic stop. After the traffic stop ended, a further detention of 47 minutes occurred before the arrests were made.

1. Medvar claims that the trial court erred in refusing to suppress the evidence against him because his consent to search was invalid as the product of a "continued detention" after the traffic stop ended. We disagree.

> An officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended. . . . The officer initiating the stop must have a particularized and objective basis for suspecting that the person stopped is, or is about to be, engaged in criminal activity, because a stop that is based only on an unparticularized suspicion or a mere hunch is invalid.

(Citations and punctuation omitted.) *State v. Trammel*, 270 Ga. App. 395, 397 (606 SE2d 613) (2004).

Here, the record shows that the deputy handed Medvar a warning citation three seconds after he asked for and received Medvar's oral consent to search his vehicle. In the two and a half minutes that followed, the deputy prepared a written consent form, handed it to Medvar, gave him an opportunity to read it, and ascertained that he understood it. Medvar signed the consent form, and returned it to the deputy. The deputy then explained the warning citation he had given to Medvar and asked the questions, "Son, you don't have any weapons on you?" and "Mind if I pat you down?"

Medvar argues that the deputy illegally extended his detention upon asking for his consent after the traffic stop ended because no evidence provided the officer with a reasonable suspicion warranting Medvar's continued detention. We have held, however, that "a request for consent to search, in and of itself, [does not] constitute[ ] a continued detention and questioning." *Anderson v. State*, 265 Ga. App. 146, 151 (2) (592 SE2d 910) (2004). Further, we find that the deputy had a reasonable suspicion of criminal activity warranting the additional questions asked and the continuance of the detention.[1] The deputy testified that both Medvar and his brother were extremely nervous, particularly Medvar's brother who reached into the glove compartment of the vehicle for its bill of sale and registration with shaking hands while breathing heavily. Medvar and his brother also gave directly conflicting stories as to their destination. Under these circumstances, the deputy had a reasonable suspicion warranting further investigation. *Trammel*, supra, 270 Ga. App. at 397;

---

[1] Medvar does not contend that his consent to the pat-down search was involuntary.

*Anderson v. State*, 261 Ga. App. 657, 659 (583 SE2d 511) (2003). Accordingly, the trial court did not err in denying Medvar's motion to suppress.

2. Further, Medvar contends that, even were there no illegal detention invalidating his consent to search, the trial court erred in denying his motion to suppress because the deputy exceeded the scope of his consent by prying open the glove compartment of his vehicle and lacked probable cause to damage the vehicle in doing so. Again, we disagree.

In searching the vehicle after Medvar gave his consent, the deputy noticed that of the four screws securing the glove compartment to the dashboard of the vehicle, two were scratched and two were missing. Given this fact and his observations before the search, the deputy used a screwdriver to lift the glove compartment enough to allow him to see behind the dashboard. As he did so, the deputy noticed the strong smell of marijuana, saw the contraband, and removed it from the vehicle. Notwithstanding any damage caused thereby, the deputy was authorized to open the glove compartment as he did. In this regard, we conclude that the deputy had probable cause to believe that contraband was in the area behind the dashboard based on his observations before and during his search of the vehicle.

> [I]n cases where there is probable cause to search a vehicle for contraband, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained. *Benton v. State*, 240 Ga. App. [243, 245 (2) (522 SE2d 726) (1999)]. The automobile exception has no separate exigency requirement. Id. Further, when an officer has probable cause to believe a sealed compartment in an automobile contains contraband, he may lawfully search it including dismantling it or damaging it. *United States v. Alverez*, 235 F3d 1086, 1089 (II) (A) (8th Cir. 2000) (officer permitted to slash a spare tire that made a thudding sound when shaken, as if full of contraband); *United States v. Martel-Martines*, 988 F2d 855, 858-859 (II) (8th Cir. 1993) (Officers had probable cause to conduct a warrantless search of a hidden compartment by punching a hole into it.).

(Citations and punctuation omitted.) *Fernandez v. State*, 275 Ga. App. 151, 160 (3) (b) (iii) (619 SE2d 821) (2005). In light of the evidence that Medvar gave his consent to a "complete" search of his

vehicle and its contents, the deputy's actions in locating and removing the contraband were also supported on this basis. See *Amato v. State*, 193 Ga. App. 459, 461 (388 SE2d 54) (1989) (Pope, J., concurring specially).

In light of the foregoing, the trial court did not err in denying Medvar's motion to suppress.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MAY 25, 2007 —
RECONSIDERATION DENIED JUNE 27, 2007.

*Maloy & Jenkins, W. Bruce Maloy*, for appellant.

*J. David Miller, District Attorney, James B. Threlkeld, Assistant District Attorney*, for appellee.